Good morning, your honors. David Partovi representing Trinidad Rivera-Corona. I will seek to save about five minutes worth of time for my rebuttal. Okay. Mr. Trinidad Rivera-Corona asks the court today to remand his case for further hearing on his motion for substitution of counsel and withdrawal of his guilty plea based on the district court's failure to adequately inquire into the circumstances surrounding the breakdown of communication between he and his counsel. As the court's aware Can I ask a question? You said breakdown of communication because that's what our cases tend to focus on. But that's not exactly what this is about, is it? No, it's not, your honor. I mean, and I don't know that you're bound, I mean, to prove breakdown of communication as opposed to some other reason why he should have gotten new counsel. And here I gather it's that he claimed, although he never really had a chance to explain it, that he was being essentially extorted or something like that. So even if he was still talking to him, would that matter? No, I think you're absolutely correct. That's the gist of my argument. I did use the phrase breakdown of communication because that's what the case law discusses. But in reality, I think extortion is the other correct word. Extortion after he went through a plea colloquy and signed an affidavit saying no, there was no threat, anything of the sort. That's correct, your honor. My reading of the record, and first let me just say that the real thrust of the appellant's argument here and the difficulty that I have with this record is that we don't know. Well, we don't know, but the district court, let me put the inference on the colloquy that went on. It seems to be that he was a retained attorney. You weren't the attorney, obviously. I was not the trial counsel. It was Nicholas Marchi. My understanding was he was retained. He was retained. He said he was. And in fact, that's part of the issue was that he'd used up the retainer. There was a change of plea on the day of trial because a co-defendant had decided to invoke the fifth. So he went through a change of plea and he signed the declaration and went through the plea colloquy in which he affirmatively stated that he wasn't coerced and so on and so forth. And then within a week, he's calling Marchi's office apparently, and then within two weeks, there's the Marchi affidavit asking to be relieved. And he tells the court that he was retained. The retainer had been used up. And then your client says, well, he wanted $5,000 to proceed to jury trial. And I was scared that he threatened to sue my family. And it appears that the district court understood it to be a fee dispute and didn't ask any questions on that and then proceeds to deny the motion to appoint substitute counsel. So why can't we infer from the record that that is essentially what was in the district court's mind as he's evaluating this and it isn't a breakdown and it's just gone through two weeks early through this colloquy. So why isn't that sufficient? Thank you, Your Honor. I think you can infer that. My problem is you could also infer that the court didn't believe Mr. Rivera-Corona that his family was being extorted. I think on the record that we have, the district court made two assumptions. I think we can assume the district court made two assumptions. One was that it was a fee breakdown. He did reference money. Second of all, on page 10 of the excerpts of record, he indicates that because you're not getting along with your counsel is insufficient. But I really think that on the record we have here, those two issues in isolation, getting along, which really wasn't ever alleged, and a fee dispute are quite potentially not the issues. I think the issue is the prosecution concept. And that's why I use the word extortion. I want to be very upfront. I do think that extortion is sort of an aggrandizement of what maybe happened here. But it's not inaccurate. What happened here is Mr. Rivera-Corona came into a court who, based on our record, had likely already made up his mind. And I had planned to refer the court back to the case of U.S. v. De Amore, where this court said that it appeared that the trial court's mind had already been made up. In our case, the court came out, read a portion of the plea agreement into the record, and said, I don't find anything in the motion which would appear to suggest a basis for allowing your attorney to withdraw. But I'm prepared to hear from counsel. So he came out not seeing a basis and then heard, my family is being threatened with prosecution if we don't pay an extra $5,000. Now, there's no reasonable way that a retained or any other type of attorney for a defendant could prosecute the family. You could theoretically sue for fees, although I think it would be the defendant, not necessarily the family, unless there was some kind of a guarantee and a contract. But to use the term prosecute is extremely troubling to me, and I think to a sense of fair justice. There, another strain here, which is, do we have any idea whether he was eligible for appointed counsel? He had previously had appointed counsel. Adolfo Banda out of Yakima, I believe, and he had been replaced by Mr. Martin. So essentially, I mean, a part of what he was asking for here was to go back to having appointed counsel, because he couldn't afford to pay his lawyer, and he wasn't paying his lawyer. That's my reading of the record. He was asking the court to appoint counsel because he was fearful of this attorney, which both Mr. Rivera-Corona and his counsel told the court, which is troubling. I mean, that's different than a breakdown in communication. That's, I'm afraid of this man. And then he goes forward and tells the court why. And in response, the court said, anything else? Now, I have great respect for that particular trial judge. I practice in front of him all the time. And I don't want to infer anything about Mr. Marchi, about what he was or was not doing, or about that court. That's not why we're here. The problem is the inadequacy of the record. What's the remedy? What are you asking for? We're asking for remand for the district court to reconsider the level of, I'll call it the breakdown in communication, but the discord between Mr. Rivera-Corona and his counsel. And based on that hearing, whether or not a withdrawal of the plea is justified. What we held in Moosa, in other words. I'm sorry, Your Honor? What we did in Moosa. That's correct. Thank you. Thank you. May it please the court. Morning. Counsel, I'm Jane Kirk. I'm representing the government in this case. What, from the reading of the record, it's clear that the defendant had a change of heart. He wanted to continue fighting his case. That's what he told the judge during the ex parte hearing. Well, he could have, it could have been exactly what he said, which is he had tried, he had wanted to go to trial, but he was told he had to pay more money. And he, I mean, there was lots of things you'd like to know. Was he told, and if you don't like it, I can go to the judge and get an appointed counsel if you can't pay me. Was he told that? We don't know. We don't know exactly what was said to him, what the, or so on. But it isn't necessarily a change of heart. It may be that he was coerced into, he felt coerced in any event, into pleading guilty because of the financial situation or because he wasn't fully informed, perhaps. And there, and that he now, when he says he wants to continue to plead, to do his case, that may not be a change of heart. It may be what he thought all along, but was coerced, or felt coerced into acceding. But the defendant, when he pled guilty, it was the first day of trial. So it wasn't as if he couldn't have had a trial. They were all ready to go to trial. He says, though, and this is what we don't know, he says no, not unless he gave the guy $5,000 more. That's what he said very briefly. There may be a whole lot more to the story. It may not be true, but we have no idea. We don't have an idea on that. But we do have the fact that at the time that he changed his plea, he didn't say that there was any problem. At the time he was sentenced, he said that there was no problem. Everything was fine. So we have those two statements, that everything is fine, and then right after the plea is taken. Wait, but he wasn't sentenced until after this, right? After the withdrawal motion. He was sentenced after the withdrawal motion. Well, right. I mean, at that point, he hadn't gotten what he wanted, so what was he supposed to do at that point? Well, he could tell the judge that he wasn't... Nobody told him, and nobody listened to him. I don't understand what the sentencing has to do with it, because the sentencing was afterwards. After he'd been refused. He could have reiterated your suggesting that he was still unsatisfied. Right. And that's what the cases show when there is found that there was no representation by counsel in the Adalanzo, the Moore, the Gwynn cases. It's that there's such conflict there, and those defendants were consistently telling the court, listen, I'm not getting along with this attorney. Suppose this is what happened. Suppose, because we all know, right? Suppose what happened was, but which would be inconsistent with what Rivera-Cronus said, that he said to his lawyer, I want to go to trial, and the lawyer said, then you'll have to pay me $5,000 more, and he said, I don't have the $5,000, and the lawyer said, and the lawyer didn't say, well, I can go see about getting an appointment, and he therefore felt that he had no choice, and let's also suppose that he was eligible for an appointed counsel. Would that not be a ground for withdrawing, for substituting counsel if that's what happened? And suppose they were still talking to each other, but let's assume that's what happened. Would that be a ground for substituting counsel? If he was told,  that would be yes. All right. So it doesn't matter whether they were talking to each other or whether it had been a communication breakdown or any of that? Well, it does matter, but in this particular case, it doesn't look. Oh, in this particular case, it doesn't really matter? No. Okay. So we need to know whether that happened, and we don't know. But we do have, at his sentencing, where he just says, everything's fine. So we're stuck trying to figure out what the judge had in mind and all I needed to do was ask a couple questions. That's true. The judge said... We said... Go ahead. The judge seemed to assume that the defendant here was not eligible for a CJA appointment, didn't he? I don't... You look at his remarks, and he said, there's no ground for an appointment or something like that. In other words, he never really... You know, I think he treated this as a pure fee case and a breakdown case and he never really looked into whether the fellow was entitled to an appointment because he'd exhausted his money and he couldn't afford, you know, this lawyer, retained lawyer wouldn't take a trial without more money. He had no more money. Seems to me that's a circumstance where then the judge ought to inquire whether, you know, he should get an appointment and, as Mr. Partoli said earlier on, he was found to be eligible for an appointment, right? Right. And the judge knew that. But he... Well... What about the comments the comments the judge made that, you know, seemed to indicate that he was not... He didn't view this defendant as a, you know... He never even considered, in other words, whether... He says here, it's a transcript, nor do I find any grounds for you to have counsel appointed at public expense. What is that supposed to mean? Well, you could say that you could interpret it the way Your Honor is that that he's not that he doesn't qualify for appointed counsel or you could interpret it also that I don't see a reason to appoint new counsel because the counsel you have is adequate. But without making the inquiry about this, you know, dispute about that that counsel having in a sense that I need $5,000 more without making an inquiry whether that was true or not. We don't know whether he made that made that demand, do we? No, we don't. And so well, so as a follow-up on what Judge Berzan said, suppose the lawyer said, well, I need $5,000 more to take you to trial and the guy said, well, I have no money, my family has no more money so I guess I have to plead guilty. That was his only option. Now, we don't know whether that was true or not because the judge never made an inquiry. The judge did not ask that question. Although he did ask at the plea change of plea colloquy there was dialogue about whether he had been coerced into doing anything. Yes, Your Honor. Now, should we give that any weight in the analysis or not? It really comes down to what happened at the request for change of counsel. I would hope that the court would give that a lot of weight. He was under oath at that time. He a reading of the record of his later when the motion to have substitute counsel it was clear from the defendant's arguments that he just wanted to continue fighting. It was a change of heart. Isn't it also true? I mean, maybe fortuitously but it's connected that the one thing that wasn't said at the Rule 11 colloquy was that he had a right to go to counsel. That is true. So ordinarily you'd say that didn't much matter but it may well have mattered here. Except for his long history with the court and the number of times he had been told that he was entitled to appointed counsel and in the plea agreement it clearly stated that he was entitled. So in this case it's rather amazing how many times he was in court and being told, you know, you have the right to appointed counsel. Where is that in the record? I don't remember that. Okay. Just a moment. I detailed it in my the assertion of facts because I was troubled by the fact that the judge in the Rule 11 did not. What page of the brief was that? Do you know that? Okay. On page 22 of the government's rule 11 the judge was informed of his right to counsel not only in writing but orally by the magistrate during his initial appearance and at both arraignments and it's the superseding excuse me the supplementary excerpts of record the second supplementary excerpts of record at 1, 2, 4, 5, 6, 13, and 14. And what about the plea agreement? It's in the plea agreement that says he's entitled to counsel? Yes it is, Your Honor. No, but see that's all in a sense water under the bridge because after that he was appointed counsel under the CJA 2 apparently his family came up with some money so he substituted retained counsel and so he had counsel up to a certain point but then the money ran out and the lawyer may have said well I can't do anything else for you unless you pay me and no one told him at that point well then you can get appointed counsel right? And he was never told that at the Rule 11 either. He was not told that at the Rule 11 although the plea agreement did say that he had that right to counsel. But you know at that point it's meaningless because he has counsel right? He had Marchie at the plea agreement but at a point after that Marchie says I need more money and he says at the Rule 11 at the Rule 11 at the Rule Rule 11 at 11 at the Rule Rule 11 at the Rule  at the th at
judges: Tashima, Fisher, Berzon